IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**
OCT - 8 2003
U.S. DISTRICT COURT
WHEELING, WV 26003

| | |
|---|---|
| JOHN DILLON and BRENDA DILLON, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> CHASE MANHATTAN MORTGAGE, a corporation, ADVANTA NATIONAL BANK, N.A., NATIONAL REAL ESTATE INFORMATION SERVICES OF WEST VIRGINIA, INC. and NATHAN WASSER, <br><br> Defendants. | Civil Action No. 5:03-CV-233 |

## NOTICE OF REMOVAL

Defendant Chase Manhattan Mortgage Corporation ("CMMC"), by its attorneys, respectfully files this Notice of Removal, pursuant to 28 U.S.C. §§ 1441 et seq., to remove the above captioned matter from the Circuit Court of Hancock County, West Virginia, in which the case is now pending, to the United States District Court for the Northern District of West Virginia. In support thereof, CMMC states as follows:

1.      On or around September 2, 2003, Plaintiffs filed their class action complaint (the "Complaint") in the Circuit Court of Hancock County, West Virginia, docket number 03-C-164. On September 8, 2003, Plaintiffs served CMMC with the summons and Complaint. CMMC's Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days of service on CMMC. A copy of the Complaint is attached hereto as Exhibit 1, as required by 28 U.S.C. § 1446(a). CMMC has not received any other process, pleadings or orders.

2.      The Complaint contains individual and putative class action claims under West Virginia consumer protection laws and common law claims. In addition to seeking damages and attorney's fees on behalf of themselves and a purported class,

Plaintiffs seek to void their outstanding mortgage loan, the current balance of which is approximately $98,389.67.   The amount in controversy in this action therefore exceeds $75,000, exclusive of interest and costs.  As shown below, removal is proper because this Court maintains diversity jurisdiction over this matter.

3.      The true parties in this action – Plaintiffs, CMMC and Advanta National Bank ("Advanta") – are citizens of different states.

        (a)      According to the Complaint, Plaintiffs John and Brenda Dillon are citizens of West Virginia.  (Complaint, para 2.)  The allegations in the Complaint relate to the origination and servicing of the Dillons' mortgage loan.

        (b)      Defendant CMMC is a New Jersey corporation with its principal place of business located at 343 Thornall Street, Edison, New Jersey 08837.  According to the Complaint, CMMC services the Dillons' mortgage loan at issue in this litigation.  (Complaint, para. 3.)

        (c)      Upon on information and belief, Defendant Advanta is a Delaware corporation.   According to the Complaint, Advanta was the originator and lender on the Dillons' mortgage loan at issue in this litigation.  (Id.)

4.      While Plaintiffs purport to bring their Complaint against two citizens of West Virginia – National Real Estate Information Services of West Virginia, Inc. ("National Real Estate") and Nathan Wasser – it is obvious that Plaintiffs fraudulently joined these parties as "defendants" solely for the purpose of destroying diversity jurisdiction.

5.      In order to establish fraudulent joinder,[1] the removing defendant must demonstrate that (1) there is no possibility that plaintiff could state the cause of action asserted against the non-diverse defendant; or (2) there was outright fraud in plaintiff's pleading of jurisdictional facts.   See Stafford EMS, Inc. v. J.B. Hunt Transport, Inc., 270 F. Supp. 2d 773, 775-76 (S.D. W. Va. 2003).   Here, fraudulent joinder is demonstrated because Plaintiffs do not state any substantive cause of action against the non-diverse defendants.   In other words, it is clear that Plaintiffs have "no real intention to get a joint judgment" against the non-diverse defendants.   Aids Counseling, 903 F. 2d at 1003 (internal quotations and citations omitted) (refusing to allow plaintiff to amend complaint under doctrine of fraudulent joinder).

6.      First, Plaintiffs name National Real Estate as a defendant in this action and allege in the Complaint that National Real Estate, the entity that conducted Plaintiffs' loan closing, is a non-diverse defendant.   (Complaint, para. 4(a).)   While National Real Estate is named as a defendant in the Complaint, no cause of action is actually asserted against National Real Estate.   (See generally Complaint.)   By bringing the Complaint against National Real Estate in name only, Plaintiffs acknowledge that they do not have, and are not asserting, a right to relief from National Real Estate. Baisden v. Bayer Corp., 2003 WL 21910701 (S.D. W. Va. 2003) (holding that plaintiff fraudulently joined non-diverse doctor in action against drug manufacturer to defeat removal based on diversity).   Accordingly, the citizenship of National Real Estate cannot defeat diversity jurisdiction.   Id.

7.      Second, Plaintiffs name Mr. Wasser as a defendant in this action and state in the Complaint that Mr. Wasser is a resident of West Virginia.   (Complaint,

---

[1] "Fraudulent joinder is a term of art, it does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against the nondiverse defendant, or in fact no cause of action exists." Aids Counseling and Testing Centers v. Group W Television, Inc., 903 F. 2d 1000, 1003 (4th Cir. 1990) (internal quotations and citations omitted) (emp. in original).

para. 4(b).)  Plaintiffs purport to assert only one cause of action against Mr. Wasser for breach of fiduciary duty to the Dillons.[2]  However, Plaintiffs could never recover from Mr. Wasser for breach of a fiduciary duty because Mr. Wasser, who is CMMC's attorney in the foreclosure proceeding against the Dillons, did not owe a fiduciary duty to the Dillons.

8.     There can be no doubt that as CMMC's attorney, Mr. Wasser owed a fiduciary duty to CMMC – not the Dillons – to the extent that he was involved in matters arising between those parties.  See Delaware CWC Liquidation Corp. v. Martin, 584 S.E. 473, 478 (W. Va. 2003) ("It is beyond cavil that this Court recognizes the attorney-client relationship to be of the highest fiduciary nature, calling for the utmost good faith and diligence on the part of [the] attorney.") (internal quotations and citations omitted).  Yet, Plaintiffs allege that "the Defendant Wasser . . . owe[s] a fiduciary duty to the borrowers." (Complaint, para. 38.)  This allegation – that CMMC's attorney could somehow owe a fiduciary duty to the opposing party in a litigious circumstance – is wholly unsupported by the law.  Not one case in West Virginia holds that an attorney for one party owes a fiduciary duty to the opposing party.  That is because any such decision would place the attorney in the impossible bind of upholding a fiduciary duty to the opposition at the expense of his duties of privilege and loyalty to his client.  Cf. id. ("An attorney's nondelegable duty of loyalty to his client and the level of trust a client places in his attorney are [] essential elements of the attorney-client relationship.").

9.     The Complaint clearly demonstrates that the Plaintiffs included one meaningless claim against Mr. Wasser for breach of fiduciary duty along with the purported claims brought against CMMC and Advanta in order to defeat diversity jurisdiction.  In fact, Plaintiffs admit that they have "no real intention to get a joint

---

[2] Plaintiffs bring six purported causes of action against CMMC and/or Advanta.

judgment," <u>Aids Counseling</u>, 903 F. 2d at 1003, against Mr. Wasser because they state that "[n]o monetary relief is sought against [Mr. Wasser]." (Complaint, para. 4(b).) As there is "no possibility of recovery" by Plaintiffs against Mr. Wasser, Plaintiffs cannot rely on the citizenship of Mr. Wasser to defeat diversity jurisdiction. <u>Stafford</u>, 270 F. Supp. 2d at 778 (holding non-diverse insurance adjuster was fraudulently joined).

10.    Because Plaintiffs state no claim against either of the non-diverse parties – National Real Estate and Mr. Wasser – the issues in controversy are between citizens of different states.  This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1332, and the action may therefore be removed to this Court from the Circuit Court of Hancock County, West Virginia pursuant to 28 U.S.C. § 1441(a).

11.    CMMC will give written notice of the filing of this Notice of Removal to Plaintiffs and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of Hancock County, West Virginia, as required by 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Chase Manhattan Mortgage Corporation respectfully requests that this action proceed in this Court as an action properly removed hereto.

Date: October 8, 2003       Respectfully submitted,

CHASE MANHATTAN MORTGAGE CORPORATION,

By: _____
                 One of Its Attorneys

Richard D. Owen, Esq. (WVA Bar #2794)
GOODWIN & GOODWIN, LLP
300 Summers Street, East
P.O. Box 2107
Charleston, WV 25328-2107
(304) 346-7000
(304) 344-9692 (Facsimile)

LeAnn Pedersen Pope
Danielle J. Szukala
BURKE, WARREN, MACKAY & SERRITELLA, PC
One IBM Plaza, 22nd Floor
330 North Wabash Avenue
Chicago, Illinois 60611-3607
(312) 840-7000

*Counsel For Defendants Chase Manhattan Mortgage Corporation*

## CERTIFICATE OF SERVICE

I, Richard D. Owen, one of counsel for the defendants, do hereby certify that service of the foregoing NOTICE OF REMOVAL has been made upon the plaintiff by causing a true and exact copy thereof to be deposited in the regular course of the United States mail, postage prepaid, on this 8th day of October 2003 to counsel for plaintiff:

Daniel F. Hedges
922 Quarrier Street, Suite 325
Charleston, WV 25301


RICHARD D. OWEN

Sep-12-2003 10:51am From-CHASE BANKRUPTCY        +8588058082        T-824  P.006/025  F-318



EXHIBIT

1

IN THE CIRCUIT COURT OF HANCOCK COUNTY, WEST VIRGINIA

JOHN DILLON and BRENDA DILLON,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.                                                CIVIL ACTION NO. _____

CHASE MANHATTAN MORTGAGE, a
corporation, ADVANTA NATIONAL BANK,
N.A., NATIONAL REAL ESTATE
INFORMATION SERVICES OF WEST
VIRGINIA, INC., and NATHAN WASSER,

      Defendants.

## COMPLAINT

### INTRODUCTION

1.    This action arises out the practice known as predatory lending,[1] whereby the

Defendants here, home-equity lenders and their associates, solicit unsophisticated borrowers and

fraudulently persuade them into unwise high-interest mortgage loans. The loans are loaded down

with excessive fees and illegal charges and the servicers refuse to service the loans in

accordance with the contract or in accordance with law. In this case, a national lender holding

company through its affiliate conspired to exploit, rural and unsophisticated homeowners. They

solicited the Dillons with representations that they would give them a low interest rate and save

them money. They were able to obtain the Plaintiffs' signature to a loan loaded with fees and

then the servicer refused to properly service the Plaintiffs' loan by charging them illegal fees,

refusing to credit the Plaintiffs' payments, paying duplicate property taxes on the Plaintiffs'

---

[1] See HUD-Treasury National Predatory Lending Task Force, Joint Report: Curbing Predatory
Home Mortgage Lending, (visited September 30, 2002)
<http://www.hud.gov/library/bookshelf18/pressrel/pr00-142.html>

NO.973        T-111  P.003        T-111        504-344-3148        FROM-MORGAN-FROM  AT JUSTICE        08-03-2003  08:38PM
SILBERBERG & WASSER + 18772721826        13:29        09/10/2003

property and then repeatedly pursuing foreclosure. Plaintiffs seek declaratory and injunctive

relief only against said Defendant.

In West Virginia and other non-judicial foreclosure states, Chase has a foreclosure attorney

who participates in the scheme. In West Virginia, this is currently the defendant Nathan Wasser.

The participating foreclosure attorney does not review the account to determine if illegal charges

have been added, but simply takes Chase's demand of amount due, demands this amount from the

homeowner, and if the homeowner does not pay, forecloses and take the consumer's home.

## PARTIES

2.      The Plaintiffs John and Brenda Dillon reside at Route 119 Hillcrest Drive,

Borderland, West Virginia 25665 and all damages accrued to them at said location.

3.      (a)      The Defendant, Chase Manhattan Mortgage ("Chase") is a corporation

which is engaged, *inter alia*, in the business of financing and servicing consumer loans in West

Virginia. Its principal place of business is located at 4915 Independence Parkway, Tampa, FL

33634-7523. The Defendant Chase is the current servicer and/or servicer of the Plaintiffs' loan.

        (b)      The Defendant Advanta National Bank, N.A. ("Advanta") was the

originator and lender of the Plaintiffs' loan. Its principal place of business is 10790 Rancho

Bernardo Road, San Diego, California 92127 and it is now an affiliate of the Defendant Chase.

        (c)      The Defendant Chase and the Defendant Advanta are hereafter sometimes referred

to as the Defendant lender.

4.      (a)      The Defendant National Real Estate Information Services of West

Virginia, Inc. conducted the Plaintiffs' loan closing. Their principal place of business is Route 1,

Box 312, Chester, West Virginia 26034.

(b)    The Defendant Nathan Wasser is a resident of Mineral County, West Virginia and is doing business in West Virginia as a foreclosure specialist at 43 Green Street, Cumberland, MD 21502-2960.  No monetary relief is sought against said Defendant.

Part A – Loan Servicing:

5.    (a)    The Plaintiffs entered into the loan that is the subject of this action in August of 1999.

(b)    The Plaintiffs' loan was held by Advanta Mortgage Corp. USA until April of 2001 when the servicing rights were transferred to Defendant Chase.

(c).    The Plaintiffs began to have problems with the servicing of their loan soon after Chase began servicing. ...

(d)    Once Chase began servicing the Plaintiffs' loan, the Plaintiffs no longer received monthly billing statements.  Chase would not send account records even when the Plaintiffs requested them and instead would simply call or send out letters stating that the Plaintiffs were behind in their loan payments.

(e)    Chase also insisted that the Plaintiffs make their payments by Western Union money orders or checks by phone rather than by sending checks through the mail.

(f)    The Plaintiffs made the following payments:    $867.54 on 03/09/01; $867.54 on 04/07/01; and $867.54 on 05/11/01.

6.    (a)    The Plaintiffs began to receive notices from Chase that they were behind in payments.  The Plaintiffs believed they were caught up on their payments but in order to save their home, they sent in $3,470.16 in payments in June of 2001 and they were told that their account was caught up.

Sep-12-2003  10:51am   From-CHASE  BANKRUPCY                    +8588088882          T-824  P.008/025  F-316

P.09/21

(b)    In July, 2001 the Plaintiffs received four notices from Golden & Amos stating that they owed a total of $3,474.00 to save their property from foreclosure. Terrified, the Plaintiffs responded by sending $1,753.48 in payments. This meant that in a two month time period, the Plaintiffs paid a total of $5,223.64 in payments to Chase. This amount is equal to greater than six of the Plaintiffs' normal monthly payments. This included illegal fees and costs.

7.    The Plaintiffs again began to receive notices from Chase in November 2001 stating that they owed $2,201.46 in payments. This amount is false. At the time of the notice, Plaintiffs had missed only one payment.

8.    In December, the Plaintiffs received a notice stating that they owed $2,196.46. This amount was false. —

9.    The Plaintiffs continued to make payments on their loan and they continued to receive notices stating that they were behind in payments: $867.54 on 01/16/02; $867.54 on 02/15/02; $867.54 on 03/14/02; and $867.54 on 04/29/02.

10.    In May of 2002, the Plaintiffs received a letter stating that they were $3,047.13 behind in payments. The Plaintiffs had made their monthly payment of $867.54 on May 4, 2002 but in addition to that payment, the Plaintiffs also paid $2,179.59 so that they would be entirely caught up on their loan payments.

11.    The Plaintiffs then continued to make their regular loan payments, but each month, they got notices saying they owed over $3,000.00 in late payments: $867.54 on 06/20/02; $867.54 on 07/13/02; and $867.54 on 08/06/02.

12.    In September of 2002 (9/02), the Plaintiffs made two payments of $862.54 each.

13.    In October 2002 (10/02), the Plaintiffs received a notice from Chase saying that they still owed $3,037.13 in payments on their loan.

P007   NO.973   F-491   1-111   P.001   304-744-9145   FROM-MOUNTAIN ST JUSTICE   01:49PM   09-03-2003

02/10/2003   13:29   SILBERBERG E WASSER → 18737871002060   P002

Sep-12-2003 18:52am   From-CHASE BANKRUPTCY                   +8596056992                 T-824  P.009/025  F-318

14.    In November of 2002 (11/02), the Plaintiffs received a notice from Chase saying that they owed $3,899.67 in payments.

15.    The Plaintiffs made a payment of $870.00 in December of 2002 (12/02).

16.    (a)    On February, 6, 2003, the Plaintiffs received a letter from Wasser stating that their home was once again in foreclosure and that in order to save their home, they would be required to pay $4,936.30.

(b)    In both February and March of 2003, the Plaintiffs attempted to make a regular monthly payment to Chase, but both of these payments were refused.

17.    (a)    In April of 2003, the Plaintiffs were asked to sign a forbearance agreement that contained:

eight delinquent payments (10/20/02 - 05/20/03);
property inspection/appraisal fees totaling $518.00; and
attorney fees and costs totaling $1,000.00.

18.    (a)    The Plaintiffs refused to sign the forbearance agreement and on July 23, 2003, the Plaintiffs received two certified letters from the Defendant Wasser stating that the Plaintiffs had to pay $8,823.40 in order to save their home from foreclosure.

(a)    On August 13, 2003 the Plaintiffs received another letter from the Defendant Wasser stating that their home would be foreclosed on on September 5, 2003.

19.    (a)    On July 28, 2003, the Plaintiffs received a letter stating that the Defendant had paid their "delinquent" real estate taxes in the amount of $335.30.

(b)    This was an error on the part of the Defendant because the Plaintiffs had already paid their own real estate taxes.

(c)    Because the Defendants paid the Plaintiffs real estate taxes, the Plaintiffs monthly payments were increased.

## COUNT I – CLASS CLAIM FOR BREACH OF DUTY OF GOOD FAITH
## AND FAIR DEALING

20.     The Plaintiffs incorporate paragraphs four through nineteen by reference.

21.     The Defendant Chase has breached its duty of good faith and fair dealing implied in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of their contract.

22.     Defendant Chase, as a matter of intentional and planned business practices, breaches its duty by:

(a)     refusing to timely credit consumers payments so as to create fees and a deficiency and moving to foreclose on the consumer's home;

(b)     assessing unauthorized charges;

(c)     pursuing foreclosure in lieu of other legal remedies; and

(d)     paying duplicate real estate taxes on customers property.

23.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure*.  The class consists of all consumer borrowers whose loans were/are serviced by Chase anytime after that date four years immediately preceding the filing of this action.

24.     The requirements of Rule 23 are satisfied as follows:

(a)     The class is so numerous joinder of all members is impracticable;

(b)     There are questions of law and fact common to all members of the class; and

(c)     The named Plaintiffs' claims are typical of those of the class as a whole.

25.   The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

26.   The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

27.   The Defendants have charged illegal fees to all members of the class.

28.   The Defendants have foreclosed upon members of the class who did not pay illegal fees and against whom they were otherwise not entitled to foreclose.

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, respectfully pray that the Court enter judgment in their favor and against the Defendant as follows:

(a)   The Court enter declaratory judgment that practices are illegal as alleged, and enjoin the Defendants from any further attempt to enforce all or part of the contracts or assert liability thereunder;

(b)   Appropriate damages against the Defendant Chase; and

(c)   Reasonable attorney's fees and the cost of this litigation ; and such other relief as the Court may deem equitable and just.

COUNT II -- CLASS CLAIM FOR ILLEGAL PURSUIT OF FORFEITURE

29.   The Plaintiffs incorporate paragraphs four through twenty-eight by reference.

30.   The Defendant Chase as a matter of routine seeks to pursue forfeiture of the equity of a borrower's home without pursuing remedies at law and for non existent or minor amounts due.

31.     This procedure and practice is in violation of the basic principle of law which prohibits the pursuit of forfeiture only as a last resort: "Equity abhors forfeiture." Bailey v. Savage, 160 W.Va. 235, 236 S.E.2d 203 (1977).

32.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure*.  The class consists of all consumer borrowers whose loans were/are serviced by Chase anytime after that date four years immediately preceding the filing of this action.

33.     The requirements of Rule 23 are satisfied as follows:

        (a)     The class is so numerous joinder of all members is impracticable;

        (b)     There are questions of law and fact common to all members of the class; and

        (c)     The named Plaintiffs' claims are typical of those of the class as a whole.

34.     The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel.  The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

35.     The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

36.     The Defendants have foreclosed upon members of the class who did not pay illegal fees and against whom they were otherwise not entitled to foreclose.

        **WHEREFORE,** Plaintiffs on behalf of themselves and all others similarly situated, respectfully pray that the Court enter judgment in their favor and against the defendants as follows:

(a)     declaratory relief that defendant Chase may only pursue forfeiture (i) after pursuit of alternative remedies; (ii) after provision of a schedule of when payments were received and credited; and with a listing of each charge added to the account, the date and justification therefor;

(b)     such other relief as may be appropriate.

### COUNT III – CLASS CLAIM FOR FIDUCIARY DUTY OF TRUSTEE

37.     The Plaintiffs incorporate paragraphs one through thirty-six by reference.

38.     The Plaintiffs allege that the Defendant Wasser as a trustee and Chase substitute trustees owe a fiduciary duty to the borrowers and creditor, and the routine pursuit of foreclosure without ascertaining that the amount claimed due by the creditor is, in fact, due breaches that fiduciary duty.

39.     The Defendant Wasser with knowledge that Chase routinely pursues these practices, continues to pursue foreclosure on its behalf knowing that the amounts claimed due are not due and without appropriate review of account records prior to pursuing foreclosure.

40.     Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure*. The class consists of all consumer borrowers whose loans were/are serviced by Chase anytime after that date four years immediately preceding the filing of this action.

41.     The requirements of Rule 23 are satisfied as follows:

(a)     The class is so numerous joinder of all members is impracticable;

(b)     There are questions of law and fact common to all members of the class; and

(c)     The named Plaintiffs' claims are typical of those of the class as a whole.

42.     The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel. The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

43.     The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

44.     The Defendants have charged illegal fees to all members of the class.

45.     The Defendants have foreclosed upon members of the class who did not pay illegal fees and against whom they were otherwise not entitled to foreclose

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, respectfully pray for the following relief:

(a)     That the Court enter declaratory judgment with respect to the breach of the fiduciary duties of the Defendant Wasser as a trustee;

(b)     That the Defendant Wasser be enjoined from pursuit of the illegal practices as alleged; and

(c)     Such other relief as the Court may deem reasonable and just.

## COUNT IV – CLASS CLAIM FOR UNAUTHORIZED CHARGES

46.     The plaintiffs incorporate paragraphs four through forty-five by reference.

47.     Defendants Chase, in the course of attempting to collect an alleged claim from the Plaintiff class routinely assesses additional charges that are not authorized by agreement or law, in violation of West Virginia Code sections 46A-2-127(g) & -128(c).

48.   Defendant Chase threatened to add fees and charges, in violation of West Virginia Code sections 46A-2-127(g) & -124(f).

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, respectfully pray that the Court enter judgment in their favor and against the defendants as follows:

(a)   The Court enter a declaratory judgment that defendant is charging unauthorized charges and enjoin illegal practices.

(b)   Civil penalties of $3,800 for each violation pursuant to West Virginia Code sections 46A-5-101(1) & -106.

(c)   Attorney fees and such other relief as the Court may deem reasonable and just.

COUNT V — CLASS CLAIM FOR ILLEGAL DEBT COLLECTION

49.   The Plaintiffs incorporate paragraphs four through forty-eight by reference.

50.   The Defendant Chase refused to credit payments to the plaintiffs' account and then demanded monies that were not due.

51.   The Defendant Chase employed unfair and unconscionable collection tactics in violation of West Virginia code section 46A-2-127(d).

52.   Plaintiffs bring this action on their own behalf and on behalf of all other similarly situated individuals, pursuant to Rule 23 of the *West Virginia Rules of Civil Procedure*. The class consists of all consumer borrowers whose loans were/are serviced by Chase anytime after that date four years immediately preceding the filing of this action.

53.   The requirements of Rule 23 are satisfied as follows:

(a)   The class is so numerous joinder of all members is impracticable;

(b)   There are questions of law and fact common to all members of the class; and

(c)   The named Plaintiffs' claims are typical of those of the class as a whole.

54.      The Plaintiffs have displayed an interest in vindicating the rights of the class members, will fairly and adequately protect and represent the interests of the class, and are represented by skillful and knowledgeable counsel.  The relief sought by the named Plaintiffs will inure to the benefit of the class generally.

55.      The Defendants have acted or refused to act on grounds generally applicable to the entire class, thereby making final injunctive, declaratory and other relief appropriate for the class as a whole.

56.      The Defendants have charged illegal fees to all members of the class.

57.      The Defendants have foreclosed upon members of the class who did not pay illegal fees and against whom they were otherwise not entitled to foreclose.

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, respectfully pray that the Court enter judgment in their favor and against the defendants as follows:

(a)      The Court enter a declaratory judgment that defendant is charging unauthorized charges;

(b)      Civil penalties of $3,800 for each violation pursuant to West Virginia Code sections 46A-5-101(1) & 106; and

(c)      Attorney fees and such other relief as the Court may deem reasonable and just.

Part B – Loan Origination

58.      In or around July of 1998, the named Plaintiffs were solicited by the Defendant, Advanta through a television ad stating the professional football player Dan Deerdorf. The ad represented that the Plaintiffs could consolidate their debts and save money with a lower interest loan.

59.    The Plaintiffs called the number and were told by the Defendant's agent that the Advanta was helping a lot of individuals in their area and that a loan with the Advanta would not be sold to another servicer.

60.    The Plaintiffs were told they would get a fixed rate of 7% on their loan and on July 22, 1998, when the Plaintiffs agreed to the loan, the Defendant sent one of their agents out to conduct a loan closing with the Plaintiffs.

61.    (a)    The Plaintiffs were directed to meet with the Defendant's agent at Wendys in Williamson.  They were concerned that there was no lawyer at the loan closing and they through the fees on the loan looked too high so they refused to sign for the loan.

(b)    When the Plaintiffs got home the Defendant, Advanta continually called them and tried to get them to reconsider signing for the loan.

(c)    The Plaintiffs were persuaded by the constant calls and went to another loan closing on July 27, 1998 at the Wendys in Williamson.

(d)    The settlement statement states that the closing took place in Chester, West Virginia over 200 miles away.

62.    Under applicable West Virginia law, the "principal," see W. VA. CODE § 46A-1-102(36), in the loan includes the following:

(a)    the net amount paid on behalf of the debtor:

| | | |
|---|---|---|
| Matewan National Bank | $ | 56,217.99 |
| Sheriff of Mingo County | $ | 138.90 |
| First USA Bank | $ | 4,807.00 |
| First USA Bank | $ | 1,009.00 |
| Cash to borrower | $ | 29,119.57 |
| | $ | 91,292.46 |

65.     The Defendant Chase/Advanta is a corporation that has engaged in a pattern of home equity skimming and predatory lending practices to make unfair loans in order to transfer home equity from borrowers to lenders.

66.     The Plaintiffs, are unsophisticated consumers with little understanding of financial matters.

67.     The loans issued by the Defendants left the Plaintiffs worse off than they were with their existing financing, and put them in jeopardy of losing their home.

68.     On information and belief, the loan agreements, contained the following unfair terms, which constituted an unfair surprise to the Plaintiffs:

     (a)     Excessive fees and costs;

     (b)     Finance charges that were represented to the Plaintiffs to be principal, thereby making the interest charges higher than represented and requiring the finance charges to be paid as principal upon refinancing; and

     (c)     A prepayment penalty.

69.     The loan agreement was induced by unconscionable conduct, specifically, the Plaintiffs were induced into a loan agreement on terms favorable to the lenders, which flipped them into unfair terms and fees.

70.     The Defendants included finance charges in the principal, in violation of *West Virginia Code* section 46A-1-102(36), and charged interest on top of this prepaid finance charge.

71.     The Defendants' conduct in inducing the Plaintiffs into the loan was unconscionable in violation of *West Virginia Code* section 46A-2-121.

(b)     plus additional charges permitted by the chapter, see W. VA. CODE § 46A-3-

109(a)(5), *i.e.*, reasonable closing costs, see W. VA. CODE § 46A-1-102(7):

| | | | |
|---|---|---|---|
| [a] | Title insurance (National Real Estate) | $ | 442.00 |
| [b] | Settlement Fee (National Real Estate) | $ | 360.00 |
| [c] | Recording fee (Mingo County) | $ | 10.00 |
| [c] | Appraiser fee (A&A Realty) | $ | 100.00 |
| | | $ | 912.00 |
| | Total Principal: | $ | 92,204.46 |

(c)     The defendants cannot include in the principal the following charges:

| | | |
|---|---|---|
| Courier fee (National Real Estate) | $ | 20.00 |
| Lender underwriting fee (Advanta) | $ | 275.00 |
| Interest (Advanta) | $ | 68.04 |
| Flood Certification (Advanta) | $ | 17.00 |
| Tax service fee (Advanta) | $ | 55.00 |
| Loan origination fee (Advanta) | $ | 3,360.00 |
| Total | $ | 3,795.04 |

The charges listed immediately above fall within the definition of "loan finance charge." *See*

W. VA. CODE § 46A-1-102(26) ("[C]harges . . . imposed directly or indirectly by the lender as an

incident to the extension of credit.").

(d)     On information and belief certain fees and charges were not reasonable or bona fide.

63.     (a)     The contract rate of interest is 9.7%.

(b)     Application of this rate of interest to the principal does not yield the monthly payment

or total payment that the Plaintiffs are being charged.

## COUNT VI – PREDATORY LENDING

64.     The Plaintiffs incorporate paragraphs fifty-six through sixty-three by reference.

72.   The loan issued to the plaintiffs was unconscionable, under all circumstances alleged, at the time it was made and/or was induced by unconscionable conduct, and therefore is unenforceable under *West Virginia Code* section 46A-2-121.

WHEREFORE, the Plaintiffs respectfully request the following relief:

(a)   Actual damages;

(b)   A civil penalty of $3,800 for each violation, pursuant to *West Virginia Code* sections 46A-5-101(1) & 106;

(c)   The Court declare that the loan agreement is void and unenforceable pursuant to *West Virginia Code* section 46A-5-101(2);

(d)   Reasonable attorney fees and the cost of this litigation pursuant to *West Virginia Code* section 46A-5-104; and

(e)   Such other relief as the Court may deem equitable and just.  Incompetent

THE PLAINTIFFS DEMAND TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

JOHN DILLON and BRENDA DILLON,
on behalf of themselves and all others
similarly situated,
By Counsel.

Daniel F. Hedges (State Bar ID No. 1660)
Bren J. Pomponio (State Bar ID No. 7774)
Heather E. Whittier
Mountain State Justice, Inc.
922 Quarrier St., Ste. 525
Charleston, WV 25301
(304) 344-3144
(304) 344-3145 (fax)
*COUNSEL FOR PLAINTIFFS*